# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DONALD L. BRECKENRIDGE and <br> HELEN M. BRECKENRIDGE, <br><br> Plaintiffs, <br><br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE <br> INSURANCE COMPANY, <br><br> Defendant. | Case No. 06-0721-CV-W-NKL |

## ORDER

On March 24, 2005, Plaintiffs Donald and Helen Breckenridge were injured when their vehicle was struck by an uninsured motorist. Plaintiffs brought suit against Defendant State Farm Mutual Automobile Insurance Company ("State Farm") to recover monies under the uninsured motorist provision of Plaintiffs' State Farm insurance policy (Count I). Plaintiffs also seek a declaratory judgment that their State Farm insurance policy provides uninsured motorist coverage of $100,000 per person and $300,000 per occurrence (Count II). Pending before the Court is State Farm's Motion for Partial Summary Judgment [Doc. # 21] and Plaintiffs' Motion for Reconsideration [Doc. # 55]. For the reasons set forth herein, both motions are granted.

### PLAINTIFFS' MOTION FOR RECONSIDERATION

1

Pursuant to the Court's October 4, 2006 Scheduling Order, the parties were required to complete all discovery, including depositions, by April 9, 2007. On April 24, 2007, Plaintiffs filed a Rule 30(b)(6) notice to take the deposition of a designated agent of State Farm [Doc. # 50] and sent State Farm supplemental Rule 26 disclosures and answers to previously propounded interrogatories. On April 26, 2007, State Farm moved for a protective order from Plaintiffs' notice to prevent Plaintiffs taking the deposition. They also asked the Court to "enforce its Scheduling and Jury Trial Order by excluding Plaintiffs' supplemental discovery responses from evidence." (Doc. # 53 at 1). In its April 27, 2007 Order, the Court granted State Farm's Motion.

Plaintiffs now move the Court to reconsider its April 27 Order with respect to Plaintiffs' supplemental discovery responses.[1] According to Plaintiffs, the supplemental discovery "relate[s] to additional medical expenses incurred by Plaintiff Donald Breckenridge for Services provided by Dr. Feigenbaum." (Doc. # 55 at 3). Plaintiffs claim the issue is moot because Dr. Feigenbaum's name was disclosed to State Farm on January 29, 2007, in Mr. Breckenridge's answers to State Farm's interrogatories. The interrogatories requested both the names of treating physicians (Interrogatory # 8) and the amounts of any medical bills (Interrogatory # 6). In his response, Mr. Breckenridge specifically stated that his answers to both Interrogatory # 6 and Interrogatory # 8 would be supplemented.

---

[1] During oral argument on July 11, 2007, Plaintiffs withdrew their Motion to Reconsider as to the portions of the Court's April 27 Order that granted State Farm's motion for a protective order preventing Plaintiffs from deposing State Farm's designated agent.

2

State Farm argues that it is "prejudiced by Plaintiffs' supplementation following the close of discovery because [State Farm] can no longer conduct discovery regarding Plaintiffs' alleged medical damages." (Doc. # 56 at 3). Because the Court finds that any prejudice to State Farm can be easily overcome, it agrees that Plaintiffs' Motion for Reconsideration should be granted in part. The Plaintiffs's supplemental responses concerning Dr. Feigenbaum's medical bills are reinstated. In addition, the Court grants State Farm leave to depose Dr. Feigenbaum prior to trial for the sole purpose of asking questions about these supplemental medical bills.

**STATE FARM'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.    Factual Overview**

At all times relevant to this lawsuit, Plaintiffs were covered by a State Farm auto insurance policy. The dispute is about which policy was in effect when Plaintiffs' 2002 Mercury Sable was hit by an uninsured motorist. State Farm has certified that Policy No. 61 6683-B02-25A ("Policy A") was the insurance policy in effect on that date. Policy A provides uninsured motor vehicle coverage with limits of $25,000 per person and $50,000 per occurrence.

In his deposition, Mr. Glenn Lorei, a State Farm Insurance Agent, testified that the letter at the end of the Plaintiffs' policy changes each time the policy is changed. In other words, Policy No. 61 6683-B02-25A ("Policy A") predates Policy No. 61 6683-B02-25B ("Policy B"), which predates Policy No. 61 6683-B02-25C ("Policy C"). (Lorei Depo. p.

67:19-25).  The parties agree that only Policy C provides uninsured motorist coverage of $100,000 per person and $300,000 per occurrence.

On January 5, 2005, Mrs. Breckenridge drafted a check to State Farm in the amount of $197.56.  The check's "for" line referenced Policy A, as does the invoice remitted with the check.  Two months later on March 5, 2005, Mrs. Breckenridge drafted another check to State Farm.  This second check was in the amount of $195.57.  Like the first check, the second check referenced Policy A on its "for" line and was remitted with Policy A's invoice.

A State Farm document titled "Contact List Results–DON BRECKENRIDGE Household" lists five contacts between Plaintiffs and State Farm.  One of the contacts occurred on April 1, 2005.  In the "Short Description" field for that contact are the words "Necho CHGD VEH."  It is undisputed that this description indicates that, on April 1, 2005, Plaintiffs contacted State Farm and changed the vehicle covered by their policy from the 2002 Mercury Sable that was hit by an uninsured motorist on March 24 to a 2003 Mercury Grand Marquis.  The document also includes a contact that occurred on April 5, 2005.  In the "Short Description" field for that contact are the words "Necho INCR U COV."  State Farm represents that this description indicates that, on April 5, 2005, Plaintiffs contacted State Farm and increased their uninsured motor vehicle coverage.  Both Mr. Lorei and Ms. Elaine Dunlap, his office manager, testified at their respective depositions that Plaintiffs' level of uninsured motor vehicle coverage was $25,000/$50,000 on March 24, 2005, and that Plaintiffs changed their policy to increase

4

their level of uninsured motor vehicle coverage from $25,000/$50,000 to $100,000/$300,000 on April 5, 2005.

An Auto Policy Status Form dated April 13, 2005, indicates that Plaintiffs' 2003 Mercury Grand Marquis is covered by Policy C and that Plaintiffs made a payment in the amount of $195.57 on March 9, 2005. Both Mr. Lorei and Ms. Dunlap testified that the April 13, 2005 Auto Policy Status Form does not in any way stand for the proposition that Plaintiffs' vehicle was covered under Policy C at any time other than April 13, 2005.

A State Farm payment history form for Policy C lists all payments made on Plaintiffs' account from January 2004 to July 2006. Despite being identified as Policy C's payment history, the form contains payments made from January 15, 2004 through July 10, 2006, including Mrs. Breckenridge's $197.56 and $195.57 Policy A payments.

Plaintiffs' premium increased by $3.40 for the coverage period from February 2, 2005 to August 2005 as compared to the prior six-month period. This amount is the same amount that would have been charged if the Breckenridges had increased their uninsured motorist coverage on the 2002 Mercury Sable for the period February 2, 2005 to August 2005.

Neither Mr. or Mrs. Breckenridge remembers discussing any change in their State Farm Auto Insurance policy prior to March 24, 2005.

## II. Discussion[2]

---

[2] Plaintiffs argue that State Farm's Motion "should be summarily denied because it is based upon hearsay documents which have not been authenticated by affidavit." (Doc. # 57 at 10). In its Reply, State Farm included transcripts from deposition testimony that authenticate the disputed documents and resolve Plaintiffs' concerns. In this Order, the Court relies upon only documents

5

Under Missouri law, "the insured has the burden of showing that the loss and damages are covered by the policy." *Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 58 S.W.3d 609, 621 (Mo. Ct. Ap. 2001). In this case, all parties agree that Plaintiffs' insurance policy included uninsured motor vehicle coverage. The primary dispute is whether Plaintiffs' State Farm insurance policy at the time of the March 24, 2005 accident contained uninsured motor vehicle coverage of $25,000 per person and $50,000 per occurrence ("Policy A") or $100,000 per person and $300,000 per occurrence ("Policy C").

State Farm has certified that Policy A was in effect on March 24, 2005. State Farm has presented evidence that Plaintiffs sent checks to State Farm dated January 5 and March 5, 2005, which were remitted with invoices referencing Policy A and included corresponding notations on their "for" lines.

State Farm has also presented evidence that Plaintiffs changed to Policy C on April 5, 2005. Specifically, both Mr. Glenn Lorei, a State Farm Insurance Agent, and his office manager, Ms. Elaine Dunlap, testified at their respective depositions that Plaintiffs' level of uninsured motor vehicle coverage was $25,000/$50,000 on March 24, 2005, and that Plaintiffs changed their policy to increase their level of uninsured motor vehicle coverage from $25,000/$50,000 to $100,000/$300,000 on April 5, 2005.

For their part, Plaintiffs argue that the April 13, 2005 Auto Policy Status form indicates that Plaintiffs made a payment in the amount of $195.57 on March 9, 2005, and

---

that have been properly authenticated.

that this payment was for Policy C. But, Mr. Lorei and Ms. Dunlap both testified that the form proves only that, as of April 13, 2005, Plaintiffs' 2003 Mercury Grand Marquis was covered by Policy C. Mr. Lorei testified at his deposition that the letters "A," "B" and "C" represent successive changes to a policy. As a result, the April 13 form contains information related to all iterations pf policy 61-6683-B02-25H which had ever covered the Breckenridges' cars, including the 2002 Mercury Sable that was involved in the accident and the 2003 Mercury Grand Marquis that replaced it. Thus, the April 13 form does not prove that Policy C covered Plaintiffs' vehicle at the time of the accident. It merely shows what coverage existed on April 13, 2005, for the 2003 Grand Marquis and what payments had been previously paid for different iterations of policy No. 61-6683-B02-25H, including policy 61-6683-B02-25H(A) and policy No. 61-6683-B02-25H(C).

Plaintiffs also argue that Policy C was in effect on March 24, 2005, because the $3.40 increase in their premium for the coverage period from February 2, 2005 to August 2005 is the same amount that would have been charged if the Breckenridges had increased their uninsured motorist limits to $100,000/$300,000. Though State Farm does not explain the reason for the $3.40 premium increase, the increase itself does not prove that Plaintiffs' uninsured motor vehicle coverage was increased before March 24, 2005. There is overwhelming evidence that Plaintiffs changed to Policy C on April 5, 2005. Furthermore, Plaintiffs sought no discovery as to why their premiums increased by $3.40 and Plaintiffs presented no evidence that the $3.40 increase was for increased uninsured motorist coverage. Plaintiffs bear the burden to prove insurance coverage and it would be

7

speculation to assume that the $3.40 increase was for uninsured motorist coverage merely because that was the amount that would have been charged if the change was made, given that there is no evidence that the change was made prior to April 5, 2005.

Plaintiffs argue that the $3.40 premium increase constitutes a policy ambiguity that must be construed against State Farm. It is well settled, however, that policy ambiguities are construed against insurers when the language of a policy is ambiguous. *Martin v. U.S. Fidelity and Guar. Co.*, 996 S.W.2d 506, 508 (Mo. 1999) ("When policy language is ambiguous, it must be construed against the insurer."). The $3.40 premium increase does not constitute a policy ambiguity that must be construed against State Farm because it does not raise any questions about the meaning of the policy's language.

Plaintiffs also claim that a State Farm payment history form supports their position that Plaintiffs' March 9, 2005 payment was a payment for Policy C. The form purports to describe the payment history for Policy C, but clearly represents all payments made on Policies A, B and C as evidenced by its inclusion of payments made in 2004, a time when neither party claims Plaintiffs' vehicle was covered by Policy C. Indeed, the payment history form even includes the $197.56 and $195.57 payments made on January 10, 2005 and March 9, 2005, which Mrs. Breckenridge specifically denoted were for Policy A.

Finally, Plaintiffs argue that Mr. Lorei was paid a commission for Policy C on January 10, 2005. Plaintiffs base this argument on portions of Mr. Lorei's deposition transcript where he seems to be discussing a pay statement from State Farm to him that includes Policies A, B and C, all with the date January 10, 2005. Given that Policies A, B
8

and C are successive versions of one policy as opposed to co-existing policies, a pay statement showing that Mr. Lorei received a commission on all three on the same date would not persuade a reasonable juror that Policy C was in effect on January 10, 2005. This is especially true when viewed in light of the evidence that Mrs. Breckenridge made payments on Policy A on January 10, 2005 and March 9, 2005, and even they don't contend that the January 10, 2005 payment included an amount for increased uninsured motorist coverage.

Given that Plaintiffs cannot remember discussing any change in their State Farm Auto Insurance policy concerning uninsured motorist coverage, the overwhelming evidence that Plaintiffs purchased the increased coverage after March 24, 2005; the Plaintiffs' failure to present evidence as to the purpose of the $3.40 premium increase; and the fact that documents relied on by Plaintiffs show premium and commission payments for all three policies regardless of which policy was actually in place, the Court concludes that no reasonable juror could find that Plaintiffs increased their uninsured motorist coverage prior to Plaintiffs' March 24, 2005 accident. Therefore, State Farm's motion for partial summary judgment is granted as to Count II.

Plaintiffs have stipulated that State Farm has already paid $25,000 to Mrs. Breckenridge as uninsured motor vehicle claim payments. Given the Court's ruling that Policy C was not in effect on March 24, 2005, Mrs. Breckenridge is entitled to nothing more under her policy than the $25,000 she received. Therefore, State Farm's motion for summary judgment as to Mrs. Breckenridge's Count I claim is granted.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion for Reconsideration [Doc. # 55] is GRANTED, and

ORDERED that State Farm's Motion for Partial Summary Judgment [Doc. # 21] is GRANTED.

  s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 31, 2007
Jefferson City, Missouri